UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:06-CR-60-SDJ |
| | § | |
| PATRICK DELEON SHEFFIELD (2) | § | |

**MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Supervised release is "'a form of postconfinement monitoring' that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." *Mont v. United States*, 587 U.S. 514, 523, 139 S.Ct. 1826, 204 L.Ed.2d 94 (2019) (quoting *Johnson v. United States*, 529 U.S. 694, 697, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000)). Criminal defendants on supervised release must comply with various conditions, some of which are mandatory, e.g., 18 U.S.C. § 3583(d) (prohibition on committing additional crimes), and some of which are discretionary, e.g., "'report[ing] to a probation officer as directed'" and "'notify[ing] the probation officer promptly of any change in address.'" Administrative Office of the United States Courts, *Overview of Probation and Supervised Release Conditions* 16, 24 (July 2024) (quoting 18 U.S.C. §§ 3563(b)(15), (17)). *See also Rico v. United States*, 607 U.S. ----, --- S.Ct. ----, 2026 WL 815786, at *2 (2026) (describing mandatory and discretionary conditions of supervised release). A defendant who violates one or more supervised-release conditions may have his release revoked and be returned to prison. 18 U.S.C. § 3583(e). Such a defendant may also be required to serve an additional "term of supervised release after [his] imprisonment." *Id.* § 3583(h).

1

In many cases, violations of supervised release are adjudicated before the end of the defendant's supervised-release term. Sometimes, however, violations that occur during a defendant's supervised-release term cannot be resolved until after the term has expired, raising the question whether the court retains jurisdiction to revoke after the supervised-release term has ended. 18 U.S.C. § 3583(i), entitled "Delayed revocation," answers that question. It grants courts limited jurisdiction to revoke supervised release even after a defendant's term of supervised release has ended. The statute provides that courts' power to revoke a term of supervised release for violation of a condition of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration," so long as "before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i). Thus, Section 3583(i) extends courts' jurisdiction to revoke supervised release beyond the expiration of a defendant's term of supervised release, subject to three limitations. First, the alleged violation of supervised release must have occurred before the expiration of the term. Second, a warrant or summons, based on such pre-expiration violation, also must be issued before the expiration of the supervised-release term. And third, the court's jurisdiction extends only "for any period reasonably necessary for the adjudication of [the alleged violation.]" *Id.*

This case concerns the interpretation of the third limitation. We know that under Section 3583(i) courts maintain extended jurisdiction only for the period "reasonably necessary for the adjudication" of an alleged supervised-release violation.

2

*Id.* The question is, when does the "adjudication" process begin (and end) for purposes of analyzing whether a period of extended jurisdiction is "reasonably necessary"? Does the reasonableness "clock"—so to speak—run from the commencement of the revocation proceeding, through the defendant's apprehension, to the court's final judgment on revocation? Or, is the clock stopped during the time between the issuance of the warrant and the defendant's arrest for the alleged violation? In other words, when measuring the "reasonably necessary" timeframe for "the adjudication," should courts toll the clock during the period between the issuance of the warrant and the defendant's arrest? As will be explained, this question has divided judges in this district.

The Court holds that under 18 U.S.C. § 3583(i), the "adjudication" process begins when the petition for warrant is filed and continues, uninterrupted, to the final revocation decision. Accordingly, the analysis of whether a period of extended jurisdiction is "reasonably necessary" involves consideration of the entire adjudication process. The clock is not tolled during the time between issuance of the warrant and the defendant's arrest—that too must be "reasonably necessary." Thus, an unreasonable delay in executing the warrant, like any other unreasonable delay in the adjudication process, can divest a court of jurisdiction to revoke supervised release under Section 3583(i).

\* \* \* \*

This matter comes before the Court on its review of the Report and Recommendation of the United States Magistrate Judge in this action, (Dkt. #120),

3

the revocation-of-supervised-release issue having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule CR-59. In the report, the Magistrate Judge recommends that the Court deny Defendant Patrick Deleon Sheffield's motion to dismiss, revoke his supervised release, and sentence him to an additional term of imprisonment and supervised release. (Dkt. #120 at 18). Sheffield waived his right to object to the Magistrate Judge's findings and recommendations and consented to the revocation of his supervised release. (Dkt. #119). The Court adopts the Report and Recommendation, and, given the divide among judges in this district on jurisdictional issues raised in this case, includes further analysis of its power to revoke Sheffield's supervised release under 18 U.S.C. § 3583(i).

## I. BACKGROUND

Twenty years ago, Defendant Patrick Deleon Sheffield was indicted for, and pleaded guilty to, receiving a firearm while under indictment, in violation of 18 U.S.C. § 922(n). (Dkt. #1 at 4); (Dkt. #65 at 1). The Court accepted Sheffield's plea and sentenced him to fifty-seven months of imprisonment, followed by three years of supervised release. (Dkt. #70); (Dkt. #85 at 2–3).

During Sheffield's term of supervised release, the United States Probation Office filed a petition with the Court, alleging that Sheffield committed several violations of his supervised release conditions. (Dkt. #105). Specifically, probation alleged that Sheffield used illegal drugs on numerous occasions, failed to submit to drug testing, and failed to attend drug counseling. (Dkt. #105 at 1–3). Probation therefore "recommended [that] the Court issue a warrant for [Sheffield] to appear in

4

court and show cause why his supervision should not be revoked." (Dkt. #105 at 3). The Court granted the petition and issued a warrant for Sheffield's arrest the next day. (Dkt. #106, #107).

Sheffield was arrested on August 29, 2025—more than 29 months after the warrant was issued, and 11 months after the supervision term expired. *See* (Docket Entry for Aug. 29, 2025). Four days (two business days) later, the Magistrate Judge held an initial appearance. *See* (Docket Entry for Sept. 2, 2025). Following his initial appearance, Sheffield waived his right to a preliminary hearing. (Dkt. #110).

Sheffield then moved to dismiss the revocation petition. (Dkt. #112). He argued that the Court lacked jurisdiction to revoke his supervised release under 18 U.S.C. § 3583(i) because "the Government has not established that the [warrant-execution] delay was reasonably necessary." (Dkt. #112 at 3). In response, the Government alleged that Sheffield absconded from supervision after the warrant was issued and, therefore, its delay in executing the warrant was reasonably necessary. (Dkt. #116 at 3–4). At an evidentiary hearing before the Magistrate Judge, the Government presented evidence that, shortly after the warrant was issued, Sheffield left the address where he and his girlfriend had been living and ceased all communication with his probation officer. (Dkt. #116 at 4); *see also* (Dkt. #120 at 16). The Government also presented evidence that Sheffield frustrated execution of the warrant by "provid[ing] a false name to a law-enforcement officer[] and fle[eing] in the presence of law enforcement." (Dkt. #120 at 16). Finally, the Government presented evidence that "[t]he United States Marshals Service made ongoing efforts to locate Sheffield,

including through public record checks of both Sheffield and his girlfriend; conducting surveillance at known addresses associated with Sheffield, his friends, and family members; and monitoring Sheffield's social media pages." (Dkt. #116 at 4); *see also* (Dkt. #120 at 16–17). Based on this evidence, the Magistrate Judge "found that there is jurisdiction to proceed to a final revocation hearing." (Docket Entry for Oct. 6, 2025).

At the final revocation hearing, Sheffield pleaded true to the allegations in the petition. (Docket Entry for Oct. 14, 2025). Sheffield also waived his right to object to the Magistrate Judge's findings and recommendations and consented to the revocation of his supervised release. (Dkt. #119). Accordingly, the Magistrate Judge issued a Report and Recommendation that the Court (a) deny Sheffield's motion to dismiss; (b) revoke Sheffield's supervised release; and (c) sentence Sheffield to 13 months of imprisonment, followed by 18 months of supervised release. (Dkt. #120 at 1, 18).

## II. Legal Standard

A district court reviews the findings and conclusions of a magistrate judge de novo if a party objects within fourteen days after being served with the report and recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2)–(3). If neither party objects to the magistrate judge's findings, the court need only determine whether those findings are clearly erroneous or contrary to law. *United States v. Carter*, No. CR H-17-676-2, 2022 WL 1043907, at *1 (S.D. Tex. Apr. 7, 2022).

### III. DISCUSSION

Sheffield does not dispute that he violated the conditions of his supervised release. (Docket Entry for Oct. 14, 2025); (Dkt. #119). So the only issue before the Court is whether, under 18 U.S.C. § 3583(i), it has retained jurisdiction to revoke Sheffield's supervised release after his supervised-release term expired. To make this determination, the Court must first interpret the scope of the jurisdictional grant in Section 3583(i), including the question whether the "reasonably necessary" requirement applies to the time between issuance and execution of a warrant for the defendant's arrest. Second, the Court must determine whether the facts of this case satisfy the jurisdictional requirements of Section 3583(i). The Court concludes that: (1) the statutory clock measuring the period of time "reasonably necessary" to adjudicate a petition for the revocation of supervised release is not tolled pending the execution of a warrant for a defendant's arrest; and (2) the delay between issuance and execution of the warrant as to Sheffield was "reasonably necessary" such that the Court retains jurisdiction under Section 3583(i).

**A. Jurisdiction Under Section 3583(i)**

A court must "examine the basis of its jurisdiction, on its own motion if necessary." *Green Tree Servicing, L.L.C. v. Charles*, 872 F.3d 637, 639 (5th Cir. 2017). Federal courts are courts of limited jurisdiction, and the law presumes that a cause of action lies outside this limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The burden therefore lies on the parties to establish jurisdiction. *Id.* "Jurisdiction is power to

7

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514, 7 Wall. 506, 19 L.Ed. 264 (1868). Without it, therefore, a court "cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Because federal courts' jurisdiction is granted by the Constitution and federal statutes, the question of jurisdiction sometimes turns on statutory interpretation. *See, e.g., Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). In this case, there is no dispute that the Court's jurisdiction to revoke Sheffield's release must derive from 18 U.S.C. § 3583(i). Section 3583(i) provides that "[t]he power of a court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration . . . ." 18 U.S.C. § 3583(i). Judges in this district have divided on the interpretation of this language, particularly as to the relevant timeframe under the statute.

In *United States v. Reaves*, this Court adopted a federal magistrate judge's report and recommendation that interpreted Section 3583(i)'s text and concluded that the "adjudication" process—which must be completed within a "reasonably necessary" time—includes the period between issuance of the warrant and the defendant's arrest. *See* No. 4:20-CR-00385-SDJ-BD, 2025 WL 1717659, at *2–3 (E.D. Tex. June 20, 2025), *report and recommendation adopted,* No. 4:20-CR-385-

8

SDJ-BD, 2025 WL 1942972 (E.D. Tex. July 15, 2025). In a later decision, another judge in this district disagreed. *See United States v. Penaloza*, 802 F.Supp.3d 978 (E.D. Tex. 2025). In the *Penaloza* decision, contrary to *Reaves*, the term "adjudication" in Section 3583(i) was construed to refer to a judicial process that begins only once the defendant is in federal custody, and therefore the statutory phrase "any period reasonably necessary for the adjudication" was interpreted to exclude pre-arrest delays. *Id.* at 982–84. In other words, *Penaloza* held that "the reasonableness analysis is focused on when the defendant is in federal custody." *Id.* at 982. Under *Penaloza*, the relevant timespan does not begin when the petition for warrant is filed, but rather only once the defendant is apprehended and in federal custody.

As explained below, this Court respectfully maintains that *Reaves* correctly interpreted Section 3583(i). The statutory text and context, as well as persuasive precedent, confirm that the relevant timeframe for the "reasonably necessary" analysis under 18 U.S.C. § 3583(i) begins when the petition for warrant is filed and runs to the final adjudication of the petition seeking revocation of supervised release.

### i. Text

Enacted in 1994, Pub. L. 103-322, § 110505, 108 Stat. 1796, and titled "Delayed revocation," 18 U.S.C. § 3583(i) provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

9

When interpreting a statute, courts must first consider the plain meaning of its text. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The text of Section 3583(i) is unambiguous. As its title suggests, the statute is designed to extend courts' jurisdiction to revoke a defendant's term of supervised release even when such revocation is "delayed" and occurs after the supervised-release term has ended. But there are limitations. Jurisdiction may be extended only for a violation of supervised release "arising before" the expiration of the supervised-release term, and only when a warrant or summons for such a violation has also issued before the expiration of the term. 18 U.S.C. § 3583(i). Finally, extended jurisdiction to revoke supervised release is limited to "any period reasonably necessary for the adjudication" of the violation.

This case concerns the proper construction of this last limitation, and particularly the phrase "any period reasonably necessary for the adjudication." The key term in this phrase is "adjudication," which is undefined in the statute. Courts construe undefined terms in accordance with their "ordinary meaning" when the statute was enacted. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012). At the time Section 3583(i) was enacted, Black's Law Dictionary defined "adjudication" as follows: "The legal process of resolving a dispute. The formal giving or pronouncing a judgment or decree in a court proceeding. . . . It implies a hearing by a court, after notice, of legal evidence on the factual issue(s) involved." *Adjudication, Black's Law Dictionary* (6th ed. 1990). In the context of supervised-release revocation, this "adjudication" process begins with the filing of a

10

petition with the court. The petition is a public filing setting forth the defendant's alleged violations of supervised release and requesting that the court issue a warrant requiring the defendant to appear and show cause why supervision should not be revoked. *See, e.g.*, *United States v. Way*, 386 F. App'x 64, 67 (3d Cir. 2010) (explaining that "revocation [of supervised release] proceedings were initiated" when "the Probation Office submitted a petition alleging that [defendant] had violated his supervised release; the District Court approved the petition and issued a warrant for [defendant's] arrest; the Probation Office submitted an amended petition to incorporate the charges for which [defendant] was later convicted; and the District Court appended the amendment"). It was just such a petition that commenced these proceedings as to Sheffield. *See* (Dkt. #105).

The next stage of the adjudication process for revocation of supervised release is the court's decision whether to issue the warrant as requested. Of course, one possible adjudication of a petition for warrant is that the court denies the petition. *See, e.g.*, *United States v. Hernandez*, No. 1:18-CR-00390-RP, 2026 WL 516930 (W.D. Tex. Feb. 23, 2026), *report and recommendation adopted*, No. 1:18-CR-00390-RP, 2026 WL 513145 (W.D. Tex. Feb. 24, 2026). However, in Sheffield's case, as in many cases, the petition was granted, (Dkt. #106), and a warrant was issued for Sheffield's arrest, (Dkt. #107). When a warrant is issued, the United States Marshals Service executes the warrant and arrests the defendant, after which the court continues the adjudicative process, including an initial appearance before a magistrate judge and preliminary hearing, which may be waived, and typically

culminating in a final revocation hearing and decision. *See* FED. R. CRIM. P. 32.1. Notably, the petition for warrant initiating the revocation proceeding, or amended petition as applicable, remains the central document throughout the adjudication process, setting forth a defendant's alleged supervised-release violations and underlying any revocation judgment.

In sum, under the ordinary meaning of the term "adjudication" at the time Section 3583(i) was enacted, and as applied to revocation-of-supervised-release proceedings, the process of resolving such a dispute begins with the petition for warrant and ends with a judgment on revocation. There is no language in Section 3583(i) supporting the notion that some portion of the adjudication process should be tolled or excluded from the court's reasonableness analysis.

### ii. Statutory History and Precedent

The Court's understanding of Section 3583(i) is supported by consideration of relevant history and persuasive precedent concerning both supervised release and probation. Supervised release and probation share a similar history, as they both involve "supervision" of a criminal defendant. *See* 18 U.S.C. § 3583; 18 U.S.C. § 3561. The primary difference between the two is that probation is served instead of a prison sentence, while supervised release is served after a prison sentence. *United States v. Panayiotou*, 652 F.Supp.3d 90, 93 (D.D.C. 2023).

As to both supervised release and probation, the sentencing court derives its power to revoke supervision from Congress. *See United States v. Taylor*, 931 F.2d 842, 844 (11th Cir. 1991). At the revocation stage of a criminal case, the court has already

12

entered a final judgment—which may be modified only in limited circumstances. *See Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (explaining that a final judgment of conviction "may not be modified by a district court except in limited circumstances"). "'Absent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims,'" like claims for revocation of supervision. *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A review of the history and evolution of the probation and supervised release statutes is helpful in understanding the scope of the Court's jurisdiction to revoke supervision.

### a. Supervised release and probation before the 1984 and 1994 amendments

Before Congress amended the probation and supervised release statutes in 1984 and 1994, respectively, those statutes did not explicitly address a court's power to revoke supervision after the term of supervision had ended. Nevertheless, interpreting the pre-amendment statutory language, courts universally held that they had jurisdiction to revoke supervision "for a reasonable time after the period of [supervision] expires." *United States v. Barton*, 26 F.3d 490, 491–92 (4th Cir. 1994) (holding that district courts retain jurisdiction to revoke supervised release after the term of supervised release expires); *see also United States v. Bazzano*, 712 F.2d 826, 835 (3d Cir. 1983) (holding the same for probation); *United States v. Neville*, 985 F.2d 992, 999 (9th Cir. 1993) (holding the same for supervised release); *United States v. Jimenez-Martinez*, 179 F.3d 980, 981–82 (5th Cir. 1999) (holding the same for supervised release).

The reasoning of these decisions began with Federal Rule of Criminal Procedure 32.1—which the supervision statutes incorporate by reference. Under that rule, a court must hold a revocation hearing "within a reasonable time." FED. R. CRIM. P. 32.1(b)(2); *Barton*, 26 F.3d at 491. Courts recognized that, "[i]f a petition [were] filed near the end of the supervisory period, the only logical construction of 'within a reasonable time' is that a hearing may be held shortly after the supervisory period expires." *Barton*, 26 F.3d at 491–92. To hold otherwise would create perverse incentives. Revocation proceedings take time, in part because due process and the Federal Rules require that the court hold a hearing before revoking supervision. *United States v. Janvier*, 599 F.3d 264, 266 (2d Cir. 2010). Were courts to lose jurisdiction immediately at the conclusion of the supervision term, "proceedings on charges of violations filed late in the term would either be rushed, leading to unreliable outcomes, or delayed, leading to avoidance of just punishment." *Id.* And many defendants "who violated the conditions of their release near the end of [their supervision term] would be immune to revocation." *Barton*, 26 F.3d at 492. Courts concluded that Congress couldn't have intended that result. Accordingly, "in order to assure that late-term violators may have their release revoked while ensuring that they receive adequate due process," courts recognized that "the district court's jurisdiction must extend past the end of the supervisory term." *Id.*

It was clear, however, that courts' post-term jurisdiction was not limitless. *See United States v. Gernie*, 228 F.Supp. 329, 337 (S.D.N.Y. 1964) (holding that a court's jurisdiction to revoke probation does not "continue indefinitely merely because a

warrant of arrest . . . was timely issued"). Courts recognized that exercising jurisdiction indefinitely "would be offensive to every concept of justice and fair play." *Id.* at 338. "When a defendant is placed on [supervision] he is told, in effect, that if he lives up to the conditions of [supervision] for the required period[,] he will then be a free man." *Sanford v. King*, 136 F.2d 106, 108 (5th Cir. 1943). This "fixed period of [supervision]" is of "vital significance" to defendants, and revoking supervision long after the term has expired would violate their reasonable expectation and reliance interests. *United States v. Strada*, 503 F.2d 1081, 1084 (8th Cir. 1974). Thus, it was understood that a court's revocation power extended beyond the term of supervision only "for a reasonable time." *Jimenez-Martinez*, 179 F.3d at 981–82.

In assessing reasonableness, pre-amendment courts considered delays throughout the revocation process—from the filing of the petition to the final revocation hearing and decision—including delays in executing the arrest warrant. In so doing, courts evaluated delays attributable to the court and delays attributable to non-court actors like the United States Marshals Service. For example, in *Jimenez-Martinez* the Fifth Circuit, interpreting the pre-amendment supervised release statute, considered whether a nearly six-year delay between the issuance and execution of the warrant was reasonable. 179 F.3d at 982. The defendant in that case argued that "holding a revocation hearing nearly six years after the issuance of the warrant [was] fundamentally unfair" such that the court lacked jurisdiction to revoke his supervised release. *Id.* The *Jimenez-Martinez* court rejected that argument, finding that the warrant-execution delay was reasonable because the defendant

15

"frustrated the execution of the arrest warrant when he absconded," and "the United States Marshals Service made numerous attempts to locate [defendant]." *Id.* (cleaned up). Thus, the court retained jurisdiction to revoke supervised release despite that delay. *Id.* at 981–82.

Other courts interpreting the pre-amendment supervision statutes similarly considered whether delays in executing the warrant were reasonable. *See, e.g.*, *United States v. Bartholdi*, 453 F.2d 1225, 1226 (9th Cir. 1972) (finding that a years-long delay in executing the warrant was reasonable, and the court therefore had jurisdiction, "because appellant was serving a state sentence during" the time between issuance and execution of the warrant); *Strada*, 503 F.2d at 1084 ("[A] long delay between the issuance of an arrest warrant and its execution may be unreasonable . . . to such an extent that it divests the court's subject matter jurisdiction.").

Indeed, at least one court found that it lacked jurisdiction to revoke supervision because of a long, unexplained delay in executing an arrest warrant. *See Gernie*, 228 F.Supp. at 338–39. In *Gernie*, eleven years passed between issuance and execution of the arrest warrant. *Id.* at 335. The defendant had not absconded or attempted to conceal his whereabouts during that time. *Id.* In fact, "during the entire period . . . he lived continuously and openly at the same address"—an address that the authorities had on file—such that "a probation officer or a United States Marshal would have had no difficulty either in locating or apprehending him." *Id.* The *Gernie* court held that the eleven-year delay in executing the warrant was unreasonable,

16

depriving the court of jurisdiction, because "no efforts whatsoever were made to execute the warrant at any time during the entire eleven year period" and "the probationer could readily have been located and apprehended at any time during the period by the exercise of reasonable diligence[.]" *Id.* at 338–39.

### b. Amendment of the probation and supervised release statutes

In 1984, Congress amended the probation statute, codifying what courts had long held: A court's jurisdiction to revoke probation extends for a reasonable time beyond the expiration of the supervision term. The amended statute provides in relevant part:

> **(c) Delayed revocation**.--The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3565(c); Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212, 98 Stat. 1987, 1995.

Ten years later, Congress did the same for supervised release, adding nearly identical language to that statute:

> **(i) Delayed revocation**.--The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i); Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110505, 108 Stat. 1796, 2017.

On their face, these amendments represented an expansion of courts' power to revoke probation and supervised release. But as noted herein, the amendments largely codified what courts had uniformly held to this point—that a court's jurisdiction to revoke supervision extends for a reasonable time beyond the expiration of the supervision term. *See United States v. Naranjo*, 259 F.3d 379, 381–82 (5th Cir. 2001) (explaining that Section 3583(i) "is in part a codification of existing law in this circuit"); *United States v. Schmidt*, 99 F.3d 315, 318 n.1 (9th Cir. 1996) ("Section 3583(i) seems to have simply codified existing Ninth Circuit law."), *overruled on other grounds by United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999); *Neville*, 985 F.2d at 998 ("When Congress revised the statutory provisions regarding probation in 1984 and added the specific 'Delayed Revocation' provision that is now 18 U.S.C. § 3565(c), it codified the well-settled principle that the jurisdiction of the court to revoke probation extends beyond the term of probation."). Thus, the amendments did not alter the status quo on expanded jurisdiction. *See Janvier*, 599 F.3d at 266 ("[E]ven before any statute expressly authorized the retention of jurisdiction over violation charges beyond expiration of the term of probation or supervised release, courts asserted such jurisdiction[.]"). Indeed, in the probation context, the amendment operated to restrict courts' jurisdiction. *Neville*, 985 F.2d at 998. Under the old probation statute, "so long as the warrant or summons issued prior to the five-year maximum term of probation . . . , the court retained the power

to revoke probation, even if the defendant had received less than five years of probation." *Id.* at 998 n.13. Under the new statute, by contrast, "the warrant must be issued prior to expiration of the defendant's [particular] term of probation." *Id.*

### c. Post-amendment precedent

Little changed following amendment of the probation and supervised release statutes. Courts continued to exercise jurisdiction after the supervision term, as they had before the amendments. And, applying the new statutes' "reasonably necessary" standard, courts continued to analyze the reasonableness of delays through all stages of the revocation process—from the filing of the petition to the final revocation hearing and decision. Thus, where a defendant challenged a delay in executing the warrant, courts continued to assess whether that delay was reasonable. *See United States v. Merlino*, 785 F.3d 79, 87 n.5 (3d Cir. 2015) (noting Section 3583(i)'s "requirement that any delay between the issuance of a warrant, its eventual execution, and conclusion of the revocation proceedings be 'reasonably necessary'"); *United States v. Morales-Isabarras*, 745 F.3d 398, 403–04 (9th Cir. 2014) (finding a six-year delay in warrant execution to be "reasonably necessary" where defendant was out of the country or incarcerated on other charges during that time); *United States v. Hernandez-Ferrer*, 599 F.3d 63, 69 (1st Cir. 2010) (explaining that the "reasonably necessary" period contemplated by Section 3583(i) "include[s] the time that the offender, by his own contrivance, cannot be haled into court"); *United States v. Bryant*, No. CR413-111-01, 2023 WL 9119922, at *2 (S.D. Ga. Nov. 27, 2023) (holding that "a two-year delay between a warrant's issuance and its execution

without justification or explanation as to why the delay was 'reasonably necessary,' 18 U.S.C. § 3583(i), deprives the Court of jurisdiction over revocation proceedings for a defendant whose term of supervised release has ended"), *report and recommendation adopted*, No. CR413-111-01, 2024 WL 83329 (S.D. Ga. Jan. 8, 2024); *United States v. Hunter*, No. 1:94-CR-32 (JCC), 2017 WL 2290836, at *2 (E.D. Va. May 25, 2017) (finding a twelve-year delay in warrant execution to be "reasonably necessary" under Section 3583(i) where defendant used "false addresses" and a "fake name" to evade capture); *United States v. Sherry*, 252 F.Supp.3d 498, 502 (E.D. Va. 2017) (finding that a 15-month delay in warrant execution was not "reasonably necessary" where "no attempt was made to execute the warrant even though [defendant] resided at the same known address throughout the period"); *United States v. Dumas*, 217 F.Supp.3d 1310, 1313 (N.D. Ala. 2016) (finding that "[t]he 22-day delay in this case from the time the warrant was issued to the time it was executed was not unreasonable").

In *Reaves*, this Court similarly considered whether a warrant-execution delay was "reasonably necessary" under Section 3583(i). *See* 2025 WL 1717659, at *2–3. The Court found that the delay was not reasonably necessary, and it did not have jurisdiction, because "the record does not indicate why the warrant was executed 21 months after it issued and 20 months after [defendant's] term of supervised release ended." *Id.* at *3.

The history preceding the enactment of Section 3583(i) in 1994 makes clear that it codifies what courts had long held: A court's jurisdiction to revoke supervised

20

release extends for a reasonable time beyond the expiration of the term of supervised release. *See supra* Part III.A.ii.a. Equally clear is that, before the passage of Section 3583(i), courts across the country enforced limits on their extended jurisdiction by considering the period between issuance and execution of warrants in their reasonableness analysis. *See supra* Part III.A.ii.a. Nothing in the text of Section 3538(i) suggests that Congress intended to deviate from this established norm and exclude the period before execution of a warrant from courts' reasonableness analysis.

Section 3583(i) was also enacted, in part, to create a legal regime for supervised release equivalent to that which already existed for probation under Section 3565(c). *See supra* Part III.A.ii.b. As the language of the two statutes is nearly identical, it is evident that, through Section 3583(i), Congress sought to codify the uniform holding of courts in the years since Section 3565(c)'s enactment: that the same reasonableness analysis should be conducted to extend courts' jurisdiction over claims for violations of both probation and supervised release. *See supra* III.A.ii.b. With this in mind, examining how courts have applied the reasonableness analysis in probation cases under Section 3565(c) also informs the Court's understanding of Section 3583(i). *Sekhar v. United States*, 570 U.S. 729, 733, 133 S.Ct. 2720, 186 L.Ed.2d 794 (2013) (When "a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))). And, as has been established, the body of case law interpreting the scope of a court's reasonableness analysis under Section 3565(c) further confirms that the

reasonableness analysis at issue in this case does not exclude the period between issuance of a warrant and the arrest of the defendant. *See supra* Part III.A.ii.c.

The same is true of the many cases that have addressed the issue since Section 3583(i) was enacted, with the only clear deviation from this norm being the *Penaloza* decision. Interpreting Section 3583(i)'s reasonableness requirement to exclude the period between issuance and execution of the warrant, *Penaloza* relied in part on decisions from other circuits. *See* 802 F.Supp.3d at 984. While some of the cited cases include dicta appearing to support *Penaloza*'s conclusion, closer examination of their analyses reveals that the opinions uniformly construe Section 3583(i)'s reasonableness requirement consistent with this Court's decision in *Reaves* and the case at bar. For example, *Penaloza* cites *United States v. Hunter*, an Eastern District of Virginia case, for the proposition that Section 3583(i)'s "any period reasonably necessary" does not encompass delays in warrant execution. *See Penaloza*, 802 F.Supp.3d at 984 (citing *Hunter*, 2017 WL 2290836, at *1–3 (E.D. Va. May 25, 2017)). But the *Hunter* court's reasoning belies that proposition. There, the court did consider whether a delay in arresting the defendant was "reasonably necessary" under Section 3583(i). *See Hunter*, 2017 WL 2290836, at *2. The court ultimately concluded that the delay was reasonable because the defendant "abscond[ed] from supervision" using "many false addresses" and a "fake name." *Id*.

*Penaloza* also points to the Ninth Circuit's decision in *United States v. Garrett* for the principle that "the purpose of § 3583(i) was to assure reasonable speed of federal adjudication after the defendant is in federal custody." 802 F.Supp.3d at 984

22

(quoting *United States v. Garrett*, 253 F.3d 443, 450 (9th Cir. 2001)) (internal quotation marks omitted). In *Garrett*, a warrant was issued for the arrest of a defendant suspected of violating his supervised release prior to the expiration of the term. *Garrett*, 253 F.3d at 445. However, the warrant could not be executed for approximately nine months after it was issued because the defendant was in state custody on an unrelated charge. *Id*. Notably, the *Garrett* court dedicated much of its analysis to considering whether the delay in executing the warrant while the defendant was in state custody was reasonably necessary, eventually concluding that it was. *Id*. at 446–50. If *Penaloza* were correct that the period between issuance and execution of an arrest warrant is irrelevant and must be excluded from the reasonableness analysis under Section 3583(i), there would have been no need for the *Garrett* court to consider it.

*Penaloza*'s reliance on certain Fifth Circuit authority is also misplaced. *Penaloza* cites various Fifth Circuit decisions that it asserts impliedly support its conclusion that the reasonableness analysis under Section 3583(i) does not include the period between the issuance and execution of an arrest warrant. 802 F.Supp.3d at 983–84 (citing *Naranjo*, 259 F.3d at 382; *United States v. Dearing*, 57 F.App'x 210, 2002 WL 31956241, at *1 (5th Cir. 2002) (unpublished table decision); *United States v. Nguyen*, 556 F.App'x 315, 315 (5th Cir. 2014); *United States v. Montes*, 764 F.App'x 409, 410 (5th Cir. 2019)). The Court respectfully disagrees. None of the cited decisions support *Penaloza*'s conclusion. In fact, none of these cases addresses the question whether the supervision statutes encompass the period between

23

issuance and execution of a warrant. And although *Naranjo*, the primary Fifth Circuit case *Penaloza* relies on, also does not squarely address the issue, its analysis is consistent with this Court's interpretation of Section 3583(i). *Naranjo* states that Section 3583(i) "is in part a codification of existing law in this circuit" and points to the Fifth Circuit's previous decision in *Jimenez-Martinez*. *Naranjo*, 259 F.3d at 382 (5th Cir. 2001) (citing *Jimenez-Martinez*, 179 F.3d at 981). As explained herein, *Jimenez-Martinez* applied the reasonableness analysis to include the period between issuance and execution of an arrest warrant. *See supra* Part III.A.ii.a. (explaining that in *Jimenez-Martinez* the Fifth Circuit analyzed the reasonableness of a delay between issuance and execution of a warrant).

\*   \*   \*   \*

The unambiguous text of Section 3583(i) resolves any question as to whether the reasonableness analysis associated with the extension of courts' jurisdiction to revoke supervised release encompasses the period from the filing of the petition to the final judgment on revocation. There is no language suggesting that this period is "tolled" pending the execution of an arrest warrant. Congress knows how to include such a tolling provision. Indeed, the statutory scheme for supervised release includes an example of a tolling provision at 18 U.S.C. § 3624(e), which provides that a "term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction" for 30 days or more. No such tolling language is present in Section 3583(i) as to the period between the issuance and execution of an arrest warrant. And as has been explained, the history of the

24

supervision statutes, both preceding and following the enactment of Section 3583(i), also refutes *Penaloza*'s construction of the statute.

### iii. The constitutional-doubt canon

In addition to misreading the text of Section 3583(i) and construing the statute contrary to decades of precedent, adopting a construction of Section 3583(i) that excludes the period between issuance and execution of an arrest warrant from the reasonableness analysis implicates constitutional concerns. Because such an approach effectively authorizes nearly limitless periods of extended jurisdiction, a defendant's due process right may be jeopardized in any number of scenarios already seen in existing case law. A hypothetical demonstrates the point. Consider a defendant who has allegedly committed a violation of his supervised-release conditions prior to the expiration of his supervised-release term, for which a warrant also issues prior to the expiration of the term. The defendant has not absconded, and the authorities have his address and location. For unexplained reasons, the warrant is not served for twenty years. Under *Penaloza*'s interpretation of Section 3583(i), the statute deems this twenty-year delay between the issuance and execution of the warrant completely irrelevant to the reasonableness analysis, because this period is excluded from consideration. But such a delay would likely raise due process issues for the defendant, particularly if he contests the alleged violation.

All this is to say that the constitutional-doubt canon provides another reason not to exclude the period between the issuance and execution of an arrest warrant from Section 3583(i)'s reasonableness analysis. The canon "militates against not only

25

those interpretations that would render [a] statute unconstitutional but also those that would even raise serious questions of constitutionality." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247–48 (2012). Thus, "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 583 U.S. 281, 286, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). To be clear, as explained herein the Court does not believe that Section 3583(i) is "susceptible of multiple interpretations." But even assuming *arguendo* that it were, an interpretation of Section 3583(i) that authorizes the extension of courts' jurisdiction to revoke supervised release for decades after the expiration of the supervised-release term, with no analysis of the reasonableness of delays in executing the arrest warrant, would raise constitutional doubt in any number of cases involving the application of the statute.

This is not an illusory concern. Due process "requires reasonable diligence in the issuance and execution of a warrant for arrest for an alleged [supervision] violation." *McCowan v. Nelson*, 436 F.2d 758, 760 (9th Cir. 1970) (collecting cases); *see also Simon v. Moseley*, 452 F.2d 306, 309 (10th Cir. 1971) (holding that a warrant for revocation of supervision "must be executed within a reasonable time . . . to avoid violation of due process principles"). Due process principles ensure that delays in executing the warrant do not "undermine [the defendant's] ability to contest the issue of the violation or to proffer mitigating evidence." *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994). From such principles, many courts have derived the corollary

26

understanding that due process may forbid a court from exercising jurisdiction where an arrest warrant was not executed with reasonable diligence. *Strada*, 503 F.2d at 1084 (holding that "a long delay between the issuance of an arrest warrant and its execution may be unreasonable and a deprivation of due process to such an extent that it divests the court's subject matter jurisdiction"); *United States v. Fisher*, 895 F.2d 208, 212 n.7 (5th Cir. 1990) ("[D]ue process concerns might arguably in certain extreme circumstances dictate that delay in execution of the warrant divests the court of jurisdiction to revoke, or otherwise prevents revocation of, the probation."); *see also Gernie*, 228 F.Supp. at 337–38 (applying the constitutional-doubt canon in holding that a court loses jurisdiction to revoke probation when the warrant was not executed within a reasonable time).

In sum, an interpretation of Section 3583(i) that places no limits on warrant-execution delays—and allows a court to exercise jurisdiction no matter how long or unreasonable those delays might be—raises "serious constitutional doubts." *See Penaloza*, 802 F.Supp.3d at 984 (holding that the "any period reasonably necessary" language in Section 3583(i) does not encompass warrant execution). The interpretation of Section 3583(i) adopted in *Reaves* and in the case at bar does not raise such constitutional concerns.

## B. Application

Having determined that Section 3583(i)'s "reasonably necessary" standard encompasses warrant execution, the Court next considers whether the 29-month

27

delay between issuance and execution of the warrant in this case was "reasonably necessary." The Court concludes that it was.

The uncontroverted evidence in this case shows that Sheffield absconded from supervision shortly after the warrant was issued, thereby frustrating execution of the warrant. For example, the Magistrate Judge found that "Sheffield failed to update his address with the probation office, failed to list a residence in his own name, provided a false name to a law-enforcement officer, and fled in the presence of law enforcement[.]" (Dkt. #120 at 16). The uncontroverted evidence also shows that the United States Marshals Service diligently attempted to execute the warrant until Sheffield's arrest by checking public records, conducting surveillance at known addresses, and monitoring Sheffield's social media pages. (Dkt. #116 at 4); (Dkt. #120 at 16–17).

Courts considering similar facts have found long delays in warrant execution to be reasonably necessary. *See, e.g., Hunter*, 2017 WL 2290836, at *2 (finding a twelve-year delay in warrant execution to be "reasonably necessary" under Section 3583(i) where defendant used "false addresses" and a "fake name" to evade capture). And in cases reaching the opposite conclusion, the record reflected that "no attempt was made to execute the warrant even though [defendant] resided at the same known address throughout the period." *See Sherry*, 252 F.Supp.3d at 502. As explained above, the record here reflects that Sheffield frustrated execution of the warrant, and the United States Marshals Service diligently attempted to execute the warrant until Sheffield's arrest. Thus, the Court finds that the 29-month delay in warrant execution

here was "reasonably necessary" such that the Court has jurisdiction to revoke Sheffield's supervised release under Section 3583(i).

## IV. CONCLUSION

It is therefore **ORDERED** that Sheffield's Motion to Dismiss Petition to Revoke Supervised Release, (Dkt. #112), is **DENIED**.

It is further **ORDERED** that Sheffield's supervised release is **REVOKED**.

It is further **ORDERED** that Sheffield is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 13 months, with 18 months of supervised release to follow, all prior conditions imposed. The Court recommends to the Bureau of Prisons that Sheffield be placed at FCI Seagoville in Seagoville, Texas, if appropriate.

**So ORDERED and SIGNED this 2nd day of April, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

29